ALABAMA AND VICKSBURG RAILWAY COMPANY *v.* J. M. A. BRENNAN.

1. CHARTER OF VICKSBURG. *Raising assessments. Power of board of aldermen.*

   Under section three of the charter of Vicksburg (Laws 1884, p. 422), the action of the board of mayor and aldermen in raising an assessment of property based on the valuation rendered by the owner will be void unless there has been notice to the owner and the assessor has complied with section thirty of the charter by reporting to the board the under-valuation, with his "statement of what he believes to be the reasonable taxable value of said property."

2. SAME. *Regulation of assessments by ordinance.*

   The above requirements cannot be dispensed with by the board. They are not abrogated or affected by section thirty-three of said charter, which declares that the assessment is to conform to such time and method as may be prescribed therefor by ordinance.

FROM the chancery court of Warren county.
HON. CLAUDE PINTARD, Chancellor.

The amended charter of the city of Vicksburg (Laws 1884, page 422) contains the following provisions in reference to the assessment of property for taxation :

"SECTION 30. *Be it further enacted,* That all assessments of the values of real and personal property subject to taxation in the city shall be made by the city assessor and collector by application to the property owner for a sworn statement of the values thereof; and said assessor and collector is hereby authorized to administer oaths for that purpose. Should the owner of any property be not found on reasonable inquiry by the assessor and collector, he shall assess the property at a fair valuation, and list it as the property of "unknown owners." Should any property holder render a valuation of his property at a sum less than the assessor believes it to be worth, he shall report the property owner and the assessment

as given to the board of mayor and aldermen, at a time to be prescribed by them, with his statement of what he believes to be the reasonable taxable value of said property. The reports of the assessor and collector shall be received and considered by the board at such time and upon such notice to the owners of the property as the board may fix; and the board of mayor and aldermen shall have the power of finally determining the taxable value of all property. . . .

" Section 33. *Be it further enacted,* That the ` city assessor and collector shall make an annual assessment of all property subject to taxation for corporate · purposes under the provisions of this charter, said assessments to conform to such time and method as may be prescribed therefor by ordinance of the board of mayor and aldermen."

In 1890 the proper officer of the Alabama & Vicksburg Railway Company rendered to the assessor of the city of Vicksburg a list of the real and personal property of said company subject to taxation by said city, together with the valuation of the same, using therefor blank forms furnished by the assessor.   When the said officer had completed his assessment, which was based on the lists and valuation thus furnished, he notified the board of mayor and aldermen thereof, and returned his assessment-roll, together with the lists so filled up by property holders.   Afterward the board of mayor and aldermen raised the assessment of the Alabama & Vicksburg Railway Company; and when the tax-collector of said city demanded the payment of taxes upon the increased valuation, the said company refused to pay, but tendered the taxes based upon the original valuation and assessment, which were refused; and when the real property of said company was advertised to be sold for taxes, and the collector was about to levy on the personal property, the said Alabama & Vicksburg Railway Company filed this bill, praying that the tax-collector be restrained and enjoined from selling said real estate, or seizing as delinquent the personal property of complainant, and that the injunction be made per-

petual upon the payment by complainant of the taxes actually due according to the original assessment, which taxes were tendered in the bill.

The bill of complaint alleges that the action of the board of mayor and aldermen in raising the assessment of complainant's property was unauthorized and void, because the assessor failed to comply with the requirements of section thirty of the charter aforesaid, in that he did not report the property owner and the assessment as given to the board of mayor and aldermen with his statement of what he believed was the reasonable taxable value of the property, and because no precedent notice of such action by the board of mayor and aldermen was given to complainant.

A demurrer to the bill was overruled and an answer filed, and the case was submitted upon an agreed statement, the substantial matters of fact contained in it being as follows:

In compliance with section thirty-three of the charter, the board of mayor and aldermen had, soon after the adoption of the charter in 1884, passed an ordinance regulating the assessment of property in said city. Said ordinance specified the manner in which said assessor should proceed in making assessments, and the time at which he should complete the lists; and further ordained that after completion of the assessment-roll, notice should be published once a week for two consecutive weeks in a newspaper in said city, notifying property owners and tax-payers that the lists had been revised, and that all objections and exceptions must be filed within twenty days from the first publication. In making the assessment for 1890, the assessor acted under said ordinance, which was then in force, and notice to the public was given as required by it, but no personal notice of any change in the valuation was given to complainant. No report was made to the board of mayor and aldermen by the assessor that complainant had undervalued its property, and no statement rendered by him of what he believed to be the reasonable taxable value of said property, and no notice was given to

appellant that such change would be made.   Upon final hear-
ing the injunction was dissolved and the bill dismissed, and
from this decree complainant has appealed.

*Birchett & Shelton,* and *Nugent & McWillie,* for appellant.

Under section thirty of the charter, the action of the board
in raising the assessment was void, for the assessor did not
comply with the requirement of said section by reporting the
undervaluation accompanied by a statement of what he be-
lieved the property to be reasonably worth.   The section
provides that the board, in making changes, shall act upon
such report of the assessor.   Without such a report, the board
has no power to change an assessment based on the valuation
rendered by the property holder.   There was no legal notice
to complainant, as required by the section.   The board could
only act after giving notice.   Notice given after the board
had raised the assessment was not contemplated, and it is
unavailing.   The whole procedure was a flagrant violation
of the rights of the property owner, and will not be tolerated.
See *Meridian* v. *Ragsdale,* 67 Miss., 86; *Ball* v. *Meridian,* 67
*Ib.,* 91.

If the assessment was in violation of law, the tax-payer
had a right to enjoin.   *Tuttle* v. *Everett,* 51 Miss., 27; *State*
v. *Harris,* 52 *Ib.,* 686; *Gamble* v. *Witty,* 55 *Ib.,* 26; *Virden*
v. *Bowers,* 55 *Ib.,* 1.

The board of mayor and aldermen had no authority to
pass an ordinance dispensing with these requirements of the
charter.   The board could not create itself equalizer of as-
sessments.   The charter nowhere creates such a board.   The
injunction should be restored and made perpetual.

*Gibson, Henry & Bien,* for appellees.

Section thirty of the charter is merely delineatory of the
duty of the assessor, except the last words in the last clause,
which confer power upon the board "to finally determine"
the taxable value of all property.   Construing these words

liberally, in accordance with the rule that statutes delegating
legislative power to municipal corporations must be so con-
strued, we find that the board had the authority, notwith-
standing a failure or neglect of duty by the assessor, to finally
determine the value of the property for taxation.   The board
could, by ordinance, prescribe the notice to the tax-payer
whose assessments had been increased.   By section thirty-
three the board had power to prescribe the time and the
method of making and returning said assessments and the
kind of notice to be given to the tax-payer.   Section thirty
is merely directory—saying what the assessor may do.   It
does not restrict or limit the power of the board.   The ordi-
nance was valid, and must control.   See 80 N. Y., 565; *Ser-
rill* v. *New Orleans*, 27 La. An.; 109 Ill., 504; 20 N. J., 500.

The notice given was sufficient.   The rolls were not finally
approved until after the giving of the notice.

Complainant cannot have relief in equity unless it alleges
and proves that the amount of taxes demanded is not justly
chargeable against its property.   No such allegations are
made or proof introduced.   The list rendered by complainant
was not, in fact, sworn to, and complainant can have no re-
lief.   See Cooley on Taxation, 356.

The board had a right to increase the assessment without
any evidence as to value being introduced.   19 Kans., 584.

CAMPBELL, C. J., delivered the opinion of the court.

The dealing by the board of mayor and aldermen with the
valuation of property of the appellant as rendered to the
assessor was not according to the charter of the city of Vicks-
burg, but in disregard of the plain requirement of section
thirty, which provides for precedent notice to the owners of
the property reported by the assessor as undervalued, "with
his statement of what he believes to be the reasonable taxable
value of said property," before action on it by the board.   It
is true that the tremendous and dangerous power is conferred
on the board of mayor and aldermen, finally, (and without any

opportunity for redress against confiscation, practically it might be under some conditions) to determine the taxable value of all property. And, in view of this, there is the greater need for observance with scrupulous exactness of the few safeguards for the property owner. The provision mentioned as contained in section thirty is about all he has, and he may justly invoke that. His valuation rendered to the assessor may be changed by the board, after a hearing or opportunity for it, upon notice to him, where the assessor has reported an undervaluation, and stated what he believes to be a proper one.

Section thirty of the charter is not affected by section thirty-three, as supposed. By the latter it is declared that the "*assessment* [*is*] *to conform to such time and method as may be prescribed therefor by ordinance,*" but this general declaration cannot be held to abrogate the specific provision of the former section as to dealing with undervaluation of property. The board may by ordinance prescribe the time and method of assessment, in conformity to the particular provisions of the charter. The two sections are harmonious, and must both stand.

It is a great mistake to suppose that the board has the right to meet in secret session (or open one either), and, without precedent notice to the property owner, and upon no other basis than its own will, to change the valuation of property by the owner. No such practice can find any sanction in the charter under consideration.

The injunction should have been perpetuated as to all the excess of taxes over the sum due upon the valuation rendered to the assessor.

*Decree reversed, and decree for such injunction to be entered.*